LAW OFFICES

# MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

190 WILLIS AVENUE, MINEOLA, NY 11501

TELEPHONE: (516) 747-0300

FACSIMILE: (516) 747-0653

INTERNET: www.meltzerlippe.com

*Richard Howard, Esq.*
*Direct Dial:  516-747-0300 ext. 177*
*Email: RHoward@meltzerlippe.com*
*Facsimile 516-237-2893*

*Video Conference Facilities*

July 28, 2015

**VIA ECF**

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   **Gutierrez v. SKYC Management, LLC,** *et al.*
> **Case No. 14 CV 6361**
> **Armas,** *et al. v.* **SKYC Management LLC,** *et al.*
> **Case No.: 14-cv-06360-PGG**

Dear Judge Gardephe:

I write on behalf of the Defendants with the consent of Plaintiffs' counsel in the two

above referenced matters.  I am happy to advise the Court that we have reached an amicable

agreement to resolve these matters.  In accordance with your rules and Mosquera v. Masada

Auto Sales, Ltd., 2011 WL 282327, [EDNY 2011], I write to explain the fundamental fairness

of the settlement of these two actions and the reason confidentiality provisions are included.

Copies of the settlement documents are enclosed herewith.



MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

The Honorable Paul Gardephe
July 28, 2015
Page 2

## Background

The Gutierrez action was commenced on behalf of certain alleged porters in apartment buildings, generally managed by SKYC Management, LLC ("SKYC").   The Armas matter was commenced on behalf of superintendents in said buildings.   Both are pursuant to the Fair Labor Standards Act and the New York Labor Law, alleging minimum wage, overtime and related violations.

The Defendants contended that: (a) virtually no overtime was incurred by any of the plaintiffs; (b) the superintendents were, for purposes of New York Labor Law, subject to the janitorial exemption; and (c) Defendants did not suffer or permit any of the alleged porters to work.

## Plaintiffs' Allegations

The alleged porters largely contended that they worked approximately 42 hours per week, in addition to performing non-porter work directly for SKYC.   They asserted dramatic underpayment of minimum wage and no payment of overtime.[1]

The Superintendents alleged they were on call ("engaged to wait") 24 hours per day and could not leave the building.

All Plaintiffs alleged Defendants engaged in retaliatory actions, seeking I-9 data and ceasing any further overtime or side jobs.

---

[1] The Defendants asserted that the alleged porters were hired by the superintendents, paid by the superintendents and often resided in unlawful space, built out in the basement, having nothing to do with  the Defendants.

707262-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

The Honorable Paul Gardephe
July 28, 2015
Page 3

**<u>Defendants' Defenses</u>**

Defendants contended they knew nothing of the porters and certainly had no records that could be used to locate anyone no longer residing (albeit unlawfully) in a building managed by SKYC.  Defendants contended that the superintendents did not work 40 hours per week, let alone overtime and they were in no way bound to the buildings.  Defendants possess surveillance verifying that at least one Plaintiff superintendent did not feel bound to the building even during regular working hours, leaving for multiple hours at a time for non-work related purposes.

**<u>Strengths of the Plaintiffs' Positions</u>**

The greatest ally for the Plaintiffs was the Defendants' failure to maintain complete records.  Further, evidence indicated the Defendants were, at least via the superintendents and perhaps regional supervisors, aware of the use of the alleged porters by the superintendents. One of the superintendents (in the largest building in question and who was not placed under surveillance) obtained affidavits from tenants to his working long hours.

**<u>Strengths of the Defendants' Position</u>**

The greatest ally for the Defendants was the apparent embellishment by the Superintendents and the likelihood that jurors would have lived in apartment buildings in the metropolitan area and would therefore know that New York City Superintendents typically do not work such long hours.  They know how often superintendents are available after normal working hours.  The Defendants also obtained affidavits from 16 current superintendents asserting that they did not work over 40 hours in a week in similarly sized buildings.  Finally,

707262-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

The Honorable Paul Gardephe
July 28, 2015
Page 4

as stated above, the Defendants obtained surveillance reports from a licensed private investigator, revealing that one Plaintiff superintendent left the building for hours at a time during normal business hours for unknown reasons on a virtually daily basis.

**Litigation Proceedings**

This matter was fiercely contested. The Defendants decided to change their practices to be compliant with, *inter alia,* wage and hour laws. In this regard they began demanding time sheets from superintendents, requiring that superintendents hire and fire no one. The Defendants mandated that superintendents do not work over 40 hours in a week, absent written authorization or emergency and requested I-9 information (right to work information to complete the I-9 form).

Plaintiff Superintendents contended this was retaliatory and motion practice ensued. The Plaintiffs' Order to Show Cause seeking a preliminary injunction was granted in part and denied in part and the Defendants were enjoined from, *inter alia,* retaliating against any superintendents and from seeking such I-9 data for the balance of the litigation.

Some of the concerns asserted in said motion practice are reflected in the Settlement Agreements, providing additional relief to the parties.

**The Settlement**

After an initial, unsuccessful settlement conference before Magistrate Pitman, and after the aforesaid motion practice, Counsel jointly decided to try a further mediation of these matters and reach a settlement. Fortunately, through the efforts of counsel and mediator Elliot

707262-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

The Honorable Paul Gardephe
July 28, 2015
Page 5

Shriftman, an amicable resolution was reached, providing significant payment to all Plaintiffs and their counsel.

Under the circumstances, this appears an eminently fair settlement to the Plaintiffs. The settlements are each for around 50% of the total claimed amount owed.  Respectfully, Defendants consider those amounts quite inflated.

Had the matter continued to the formation of a conditional collective of superintendents, the number of additional opt-ins, if any is in question, as many (well beyond the aforesaid affiants) asserted their willingness to testify on behalf of the Defendants. Similarly, it is unlikely that additional alleged porters would be located, as Defendants could not provide any contact information. In addition, Plaintiffs in both actions would have likely encountered significant challenges in establishing the amount of overtime hours for which they allegedly were not paid.

A review of the "Grinell factors," City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.1974) further reveals the fundamental fairness of the settlement.[2]  In sum, the litigation was complex by the nature of the work of a building service worker.  Here, superintendents were claiming round the clock work performed, which was utterly disputed and difficult for any party to prove.  Had the litigation continued, it would have done so for an extreme period of time, considering the number of potential witnesses and breadth of the issues.  Of course greater length in and of itself increases cost dramatically.  By settling before depositions

---

[2] While the settlements in question are not on a class-wide basis, factors for determining fairness would appear almost equally applicable.

707262-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

The Honorable Paul Gardephe
July 28, 2015
Page 6

began, but after the exchange of documentary discovery and after motion practice, the parties were able to get a reasonable idea of the strengths and weaknesses of each other's positions without incurring unnecessary expense. Considering the surveillance information, there were very real risks of a finding of no liability or remarkably low damages. Greater damages awarded at trial would only result in bankruptcy proceedings, which Plaintiffs' counsel were advised was a real possibility. Consequently the amount of the settlement is eminently reasonable.

In sum, the benefits of this settlement for all concerned are compelling. Not one deposition has been taken. Attorneys' fees have been kept to a reasonable amount. The Plaintiffs are receiving their payment presently, without concern for the potential bankruptcy of the Defendants. The certainty of payment is of obvious benefit to all concerned. Plaintiffs do not have to place their credibility before a jury (particularly considering the private investigator testimony).

Consequently, the settlement is eminently fair.

**<u>Confidentiality</u>**

First and foremost, no party seeks the sealing of the settlement documents. All parties recognize that an FLSA settlement document is "...a judicial document subject to the presumption in favor of public access..." <u>Thornhill v. CVS Pharm., Inc.</u>, 2014 WL 1100135, [SDNY 2014]. The parties do, however, seek to have the settlement agreement's confidentiality provision remain in effect. In sum, there is a major difference between the filing of a judicial document and the intentional publication of a settlement, potentially out of

707262-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

The Honorable Paul Gardephe
July 28, 2015
Page 7

malice or other misguided reasons. This is recognized in <u>Chapman-Green v. Icahn House W.</u>
<u>LLC</u>, 2013 WL 474352, [SDNY 2013], in which the confidentiality provision was permitted
and the Court stated, "…this mitigates any perceived harm from the required public filing of
the document."

This is all that is sought. The Agreement is a public record. Defendants would prefer
otherwise, but bow to the overwhelming weight of authority, contrary to the Defendants'
desire. The confidentiality, coupled with the filing of the Agreement and General Release
with this letter, is limited and satisfies both the FLSA policy of avoiding the sealing of the
settlement documents and avoids unnecessary provocation, thereby fostering settlement of the
dispute, which is also a valid and well settled public policy. I note that the confidentiality
provision specifically does not apply to any governmental entity.

I respectfully submit this is particularly true in the context of a settlement resulting
from mediation. Remarkably recently, in <u>Galantowicz v. Rhino Room Inc.</u>, 2015 WL
3604672, [WDNY June 8, 2015] in the context of arbitration, the Court stated, "…Because
confidentiality is a paradigmatic aspect of arbitration, … [E]xcept to the extent that the
public's right of access requires that the Award be publicly docketed, the parties should be
held to the confidentiality obligations to which they stipulated." Certainly, confidentiality is
equally part and parcel to mediation. Therefore the same result should apply.

Plaintiffs' and Defendants' counsel share the belief that each of the Plaintiffs in both
actions are made fully whole by the portions of the settlements that each of them will receive.

707262-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

The Honorable Paul Gardephe
July 28, 2015
Page 8

The principal compromise by Plaintiffs in this agreement is that this matter is being resolved prior to class certification. In this regard, it is noted that other superintendents and porters are not precluded from asserting their own causes of action in the future.

**Conclusion**

Based upon the above, it is respectfully submitted that the settlements reached in the two above referenced matters fairly compensate the Plaintiffs and should be approved in their entirety.  Your consideration of the above is appreciated.

Respectfully submitted,
Meltzer, Lippe, Goldstein & Breitstone, LLP

/s/ Richard M. Howard
_____
Richard M. Howard

190 Willis Avenue
Mineola, New York
(516) 747-0300

Encls.

cc:     Client
        Milo Silberstein, Esq.
        Marc Rapaport, Esq.

707262-2

## AGREEMENT AND GENERAL RELEASE

IT IS HEREBY STIPULATED AND AGREED this ___ day of June, 2015, by and between: (a) PORFIRIO SEVERINO FIGUEROA ("Figueroa"), VICTOR GOMEZ ("Gomez"), RAUL GUTIERREZ ("Gutierrez"), EDILIO GUZMAN ("Guzman"), HAROLD F. JIMENEZ ("Jimenez"), ALFREDO LUIS OVALLE (Ovalle"), JOSE PALOMEQUE ("Palomeque") and ESTHER VARGAS ("Vargas") (hereafter Figueroa, Gomez, Gutierrez, Guzman, Jimenez, Ovalle, Palomeque and Vargas are jointly referred to as "Releasors"); and (b) SKYC MANAGEMENT LLC a/k/a GREISMAN MANAGEMENT and a/k/a B. GREISMAN REALTY, 161 HOLDING LTD, SHIMON GREISMAN, GARY GARTENBERG, POST LLC; ABBY ASSOCIATES; 2275 HOLDING LTD; 22 HOLDING CORP.; CHAMA HOLDING CORP.; 346 HOLDING CORP.; STEB REALTY CORP.; 674 HOLDING LTD; 666 HOLDING LLC; 116 WEST CORP.; DBPB HOLDING CORP.; HELBOR REALTY CORP.; BRAGREIS REALTY CORP.; S&S GROUP HOLDINGS, LLC; BRONX RIVER ASSOC. LLC; WALTON AVENUE REALTY ASSOC LLC; TOWNSEND AVENUE REALTY LLC; 1820 HOLDING LTD; HENNESSY REALTY LLC; GLEASON LLC; 2246 HOLDING CORP.; 2188 REALTY LTD; 2195 GRAND CONCOURSE REALTY LLC; 2472 WEBSTER REALTY LLC; 2281-85 REALTY LLC; 2395-97 REALTY LLC; UNIVERSITY REALTY HOLDINGS LLC; 2522 REALTY LLC; AND HEIGHTS REALTY CO., LLC, (all hereinafter referred to as Skyc or "Releasees") The terms Skyc or Releasees herein includes each, every and any company affiliated with Skyc, as well as their agents, employees, principals, partners, officers, successors, and assigns, both individually and in their official capacities, and thereby includes all such persons affiliated with Skyc.

In return for the good and sufficient consideration set forth below, Releasors agree to resolve all claims against Releasees, including, but not limited to, those which resulted in an action commenced in the United States District Court for the Southern District of New York, bearing docket number 14 - Cv- 06361 (referred to herein as the "Matter"), as follows:

1.      Skyc shall pay Releasors payment in the gross amount of three hundred thirty-five thousand dollars ($335,000.00), payable 10 days from the execution of this Agreement and General Release, and the Court's acceptance of this settlement, whichever is later, as follows:

A.      Skyc shall issue a single check in the gross and net amount of one hundred twelve thousand, three hundred thirty-three dollars ($112,441.45), payable to Dealy Silberstein & Braverman, LLP,

B.      The check issued in accordance with subpart A is attributable to attorney's fees as per the fee shifting nature of the statutes in question.

C.      The checks issued in accordance with Schedule A, sub parts A and C-I are issued in the nature of liquidated damages pursuant to the Fair Labor Standards Act, Article 198 (1-a) of the New York Labor Law or the ordinances of the New York City Commission on Human Rights.

D.      The remaining checks are issued in the nature of back wages allegedly owed to these individuals.

E.      Releasors acknowledge that the above sums constitute full payment for every hour worked by each Releasor on behalf of Skyc (including payment at the rate of time and one-half of her hourly rate for all hours greater than 40 worked in any particular week) and any accrued personal or vacation days.

700453-1                                        2

2.      In return for the consideration described above, Releasors release and forever discharge Releasees, their agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits, attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, arising out of Releasors' employment with Releasees, which against Releasees, Releasors, their heirs, executors, administrators, agents, successors, and assigns, ever had, may now have or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever including, but not limited to, those arising under any federal, state or local, human or civil rights, wage-hour, or labor laws and/or regulations, contract or tort laws, including, but not limited to:

- all Claims arising out of Releasors' employment/attempted employment with Releasees, under: *Title VII of the Civil Rights Act of 1964; as the Civil Rights Act of 1991; the Age Discrimination in Employment Act of 1967,* 29 USC §621, *et seq.; the Older Worker Benefit Protection Act 29* U.S.C. §626(f); *the Rehabilitation Act; the Equal Pay Act; the Employee Retirement Income Security Act of 1974,* as amended, 29 U.S.C. § 1001 et seq.; *the Worker Adjustment and Retraining Notification Act of 1988,* 29 U.S.C. § 2101 et seq.;, *the Americans with Disabilities Act,* 42 U.S.C. § 12101 et seq.; *the Family and Medical Leave Act of 1993,* 28 U.S.C. §§ 2601 and 2611

et seq. and any amendments or modifications thereto; *the New York Human Rights Law; the New York Executive Law; the New York City Administrative Code and Civil Rights Laws;* and any other laws against employment discrimination in any state or locality; *the New York Whistleblower Law (New York Labor Law §740, et seq.; the anti-discrimination and anti-retaliation provisions of the New York Worker's Compensation laws (e.g., §120) and of the Sarbanes-Oxley law; and of OSHA;* Sections 1981-1988 of *Title 42 of the United States Code; the Fair Credit Reporting Act; the Immigration Reform Control Act;* any amendments to the statutes referred to herein; and any other federal, state or local law relating to employment discrimination, unlawful harassment or retaliation, human or civil rights, employment protection or standards of any kind or nature;

- all Claims arising out of Releasors' employment/attempted employment with Releasees and/or receipt of premises from Releasees, alleging: unlawful detention of property, conversion; breach of promise, breach of contract or implied contract; fraud; misrepresentation; fraudulent inducement; promissory estoppel; unjust enrichment; quantum meruit; conversion; negligence; recklessness or personal injury; defamation; or otherwise arising under any common law theory or in tort, contract or quasi-contract, whether in law or equity;

- all Claims arising under or concerning: *The Fair Labor Standards Act,* 29 U.S.C. § 201 et seq. *Article 6 or Sections 190-198 of New York Labor Law,* and any similar federal law or law of any state or locality; sales commissions earned or accrued, whether as an employee or independent contractor; any costs, damages, interest, liquidated damages or attorneys' fees relating to any such alleged violation; allegedly unpaid wages, salary, or overtime compensation; employee classification; exempt classification; "at-will" classification; or any other asserted basis for additional remuneration or other rewards;

- all Claims for:   fringe benefits; employee benefits; employee contributions; supplemental benefits; allowances; reimbursement; participation in any benefit plan; administration or application of any benefit plan; and any claims for non-vested benefits arising under ERISA;

- all Claims arising out of Releasors' employment/attempted employment with Releasees, for:  costs, fees or attorneys' fees (other than as provided for above); payment of income and employment taxes, except as to taxes withheld for Releasor's benefit pursuant to paragraph 1 above; and any other Claims arising or accruing up to the date each Releasor signs this Agreement as the result of any cause, matter or thing, of any kind or nature, against Releasees, their agents,

successors and assigns, both individually and in their official capacities, from the beginning of the world to the date of this Agreement.

- All claims for continued or future employment with any and all Releasees

3.    Releasors promise and represent that they will withdraw, with prejudice, any and all outstanding administrative complaints or charges, filed with federal, state and local agencies/administrative bodies and will also withdraw/discontinue with prejudice all arbitrations and judicial actions, including, but not limited to, the Matter, as well as any and all other lawsuits, claims, demands, appeals or actions pending against Releasees and will not file any other administrative or judicial complaints, charges, lawsuits, claims, demands, appeals or actions of any kind based on Releasors' employment with Releasees or the termination thereof. In the event any such complaints, charges, lawsuits, claims, demands, appeals or actions are not withdrawn or are filed due to circumstances beyond their control, each Releasor promises and represents that he/she will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceedings connected with or resulting from such complaints, charges, lawsuits, claims, demands, appeals or actions and that she will execute such papers or documents, which are factually accurate, as may be necessary to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice.   Should any Releasor be compelled to testify in any matter concerning Releasees, he/she shall provide notice immediately upon notice of same to Releasees and their counsel (Meltzer, Lippe, Goldstein & Breitstone, LLP).

700453-1                                        6

4.      Releasors agree and understand that nothing contained in this Agreement and General Release is an admission by Releasees of any liability, breach of duty or unlawful conduct whatsoever or violation of any local, state or federal law, regulation or ordinance. To the contrary, Releasees specifically deny any wrongdoing whatsoever. Rather, in order to avoid wasting unnecessary time and expense and to reach an amicable resolution of the Matter, Releasees enter into this Agreement and General Release. Similarly, Releasors deny any wrongdoing and enter into this Agreement and General Release for the reasons set forth above, as well as for the consideration described in the first paragraph hereof.

5.      Nothing in this Agreement shall be construed to restrict any communications or participation any Releasor may have with any agency of the United States government, subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law. Each Releasor understands that although he/she is not prohibited from filing a charge or complaint against any Releasee with any agency of the United States government, subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law; by virtue of this Agreement, each Releasor waives any right to recover monetary damages in any charge, complaint or lawsuit filed by any Releasor or anyone else on Releasors' behalf. Should any Releasor be subpoenaed to testify in any subsequent action or proceeding involving Releasees, he/she will forthwith notify Releasee and at that time provide Releasee with a copy of any such subpoena.

6.      This Agreement and General Release may not be modified, altered or changed except upon express written consent of both Releasors and Skyc.

7.      Other than as provided in Paragraph 5, hereof, the terms of this Agreement and General Release may not be voluntarily disclosed by any Releasor to anyone other than said

Releaor's immediate family, financial advisor or counsel and then, only upon the assurance that said persons/entities will maintain said confidentiality. As a breach of this provision will cause damages to Releasees that are difficult to quantify, the parties hereto have agreed that each such breach, if any, will result in liquidated damages of twenty-five thousand dollars ($25,000.00).

8.    **Releasors represent that they have been and hereby are advised to consult legal counsel regarding this Agreement and General Release and that they have each done so. Releasors must fully execute and return this Agreement and General Release by August 3, 2015, a date in excess of twenty-one (21) days from its delivery to them. Releasors acknowledge that they have been given twenty-one (21) days to consider this Agreement and General Release carefully, and fully understand and agree to all of its terms. If the Agreement and General Release is not fully executed and returned by that date, it will be void *ab initio*. If, however, all Releasors execute the 21 day waiver attached hereto, then they must return this Agreement and General Release no later than July 28, 2015 or it will be void *ab initio*.**

**Any Releasor may revoke this Agreement and General Release within seven (7) days of signing it.** This seven (7) day time period will begin to run the day after all Releasors execute this Agreement and General Release. If any Releasor revokes this Agreement and General Release, it shall be rescinded in its entirety and no Releasor will receive the benefits set forth herein. Said revocation must be in writing, and must be delivered by hand or by certified mail, return receipt requested, to Richard M. Howard, Esq. Meltzer, Lippe Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, New York 11501 and received within seven (7) days of the execution of this Agreement and General Release. If this Agreement and

General Release is not revoked, it shall become effective eight (8) days after execution, subject to the United States District Court's approval of same. If the last day of the revocation period is a Saturday, Sunday or legal holiday, then the revocation period shall not expire until the following day which is not a Saturday, Sunday, or legal holiday.

9.      This Agreement and General Release may be executed in counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute the same instrument.

10.     All prior negotiations, agreements, and understandings of the parties are superseded by this Agreement and General Release.

11.     No waiver or modification of any provision of this Agreement and General Release shall be valid unless in writing and signed by the parties.

12.     Whenever used in this Agreement and General Release, the singular word shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. This General Release shall not be interpreted in favor of, or against, either party because of such party having drafted this General Release.

13.     This Agreement and General Release shall be subject to and governed by the laws of the State New York without giving effect to principles of conflicts of law.

14.     If any term or provision of this Agreement and General Release, or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement and General Release, or the applications of such term or provisions to persons or circumstances other than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement and General Release shall be valid and be enforced to the fullest extent permitted by law.

700453-1                                 9

15.     Releasors agree to execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement and General Release, including, but not limited to, a Stipulation of Discontinuance With Prejudice, to be filed in the form annexed hereto, upon the passing of eight (8) days after this Agreement and General Release is fully executed.

16.     It is specifically understood that Releasees does not intend to use porters in any of the buildings in which the Releasors allegedly worked.  Consequently, none of the Releasors will be suffered or permitted to work in any of the buildings managed by Skyc.  More particularly, albeit included within the above, Esther Vargas is not being suffered or permitted to work in any capacity in any building managed by Skyc, including the building in which her husband is currently a superintendent/janitor.

17.     Releasors acknowledge that, prior to signing this Agreement, this Agreement has been translated from English to Spanish by a certified interpreter fluent in English and Spanish.

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this _17_ day of July, 2015.


Porfirio Severino Figueroa


Translated from English to Spanish By:


STATE OF NEW YORK
                    } SS:
COUNTY OF NEW YORK

On July _17,_ 2015, before me personally came Porfirio Severino Figueroa to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.


Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 02OR6308932
Qualified in Queens County
Commission Expires August 4, 20_16_

700453-1                                    11

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this 13th day of
July, 2015.

Victor Gomez

*Victor Gomez*

Translated from English to Spanish By:

*Evelynne Gomez*

STATE OF ~~NEW YORK~~ Massachusetts
} SS:
COUNTY OF ~~NEW YORK~~ Suffolk

On July 13, 2015, before me personally came Victor Gomez to me known, and who

executed the foregoing Agreement and General Release, and each duly acknowledged to me that

each executed the same.

Notary Public

TATIANA S. RODRIGUES
Notary Public, Commonwealth of Massachusetts
My Commission Expires May 25, 2018

700453-1                                    12

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this 20 day of July, 2015.

Raul Gutierrez

*Raul Gutierrez*

Translated from English to Spanish By:

STATE OF NEW YORK
} SS:
COUNTY OF NEW YORK

On July__, 2015, before me personally came Raul Gutierrez to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 02OR6308592
Qualified in Queens County
Commission Expires August 4, 20__

700453-1                                    13

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this 17 day of July, 2015.

Edilio Guzman

*Edilio Guzman*

Translated from English to Spanish By:

STATE OF NEW YORK
                    } SS:
COUNTY OF NEW YORK

On July 17 2015, before me personally came Edilio Guzman to me known, and who

executed the foregoing Agreement and General Release, and each duly acknowledged to me that

each executed the same.

Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 080RO6065608
Qualified in Queens County
Commission Expires August 4, 2018

700453-1                                    14

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this _/7_ day of July, 2015.

Harold F. Jimenez

Translated from English to Spanish By:

STATE OF NEW YORK

COUNTY OF NEW YORK } SS:

On July _/7_, 2015, before me personally came Harold F. Jimenez to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 02OR6308832
Qualified in Queens County
Commission Expires August 4, 20_/8_

700453-1                    15

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this 22 day of July, 2015.

Alfredo Luis Ovalle

_alfredo ovale_

Translated from English to Spanish By:

STATE OF NEW YORK
           } SS:
COUNTY OF NEW YORK

    On July 22 2015, before me personally came Alfredo Luis Ovalle to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 02OR6308932
Qualified in Queens County
Commission Expires August 4, 20_18_

700453-1              16

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this _17_ day of July, 2015.

Jose Palomeque

Translated from English to Spanish By:

STATE OF NEW YORK
} SS:
COUNTY OF NEW YORK

On July _17_ 2015, before me personally came Jose Palomeque to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 020R6300632
Qualified in Queens County
Commission Expires August 4, 20__18

700453-1                                    17

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this ⎵17 day of July, 2015.

Esther Vargas

*(signature)*

Translated from English to Spanish By:

*(signature)*

STATE OF NEW YORK

COUNTY OF NEW YORK } SS:

On July 17 2015, before me personally came Esther Vargas to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

*(signature)*

Notary Public

PATRICIA BROWN
Notary Public, State of New York
No. 01BR4769987
Qualified in Kings County
Commission Expires 04/30/20__

STATE OF NEW YORK

COUNTY OF KINGS                 } SS:

On July 30, 2015 before me personally came Shimon Greisman, to me known, and who

executed the foregoing Agreement and General Release, individually and on behalf of all

Releasees and himself, as an officer of each said company and duly acknowledged to me that he

executed the same upon the order of the Board of Directors or other members of each said

company and in his individual capacity as well.

Notary Public

GOLDENBERG FAIGY
Notary Public, State of New York
No. 01GO6068434
Qualified in King County
Commission Expires 12/31/20

700453-1                              19

**SHOULD RELEASORS NOT WISH TO USE THE 21-DAY PERIOD,
THEY MAY CAREFULLY REVIEW AND SIGN THIS DOCUMENT**

I, Porfirio Severino Figueroa, Victor Gomez, Raul Gutierrez, Edilio Guzman, Harold F. Jimenez, Alfredo Luis Ovalle, Jose Palomeque and Esther Vargas, each acknowledge that I was informed and understand that I have twenty-one (21) days within which to consider the attached Agreement and General Release, have been advised of my right to consult with an attorney regarding such agreement and have done so and have considered carefully every provision of the Agreement and General Release and that, after having engaged in those actions, each of us prefer to and have requested that we enter into the Agreement and General Release prior to the expiration of the twenty-one (21) day period.

_____
Porfirio Severino Figueroa

_____
Victor Gomez

_____
Raul Gutierrez

_____
Edilio Guzman

_____
Harold F. Jimenez

_____
Alfredo Luis Ovalle

_____
Jose Palomeque

_____
Esther Vargas

Witness

_____

700453-1                                    20

**SHOULD RELEASORS NOT WISH TO USE THE 21-DAY PERIOD,
THEY MAY CAREFULLY REVIEW AND SIGN THIS DOCUMENT**

I, Porfirio Severino Figueroa, Victor Gomez, Raul Gutierrez, Edilio Guzman, Harold F. Jimenez, Alfredo Luis Ovalle, Jose Palomeque and Esther Vargas, each acknowledge that I was informed and understand that I have twenty-one (21) days within which to consider the attached Agreement and General Release, have been advised of my right to consult with an attorney regarding such agreement and have done so and have considered carefully every provision of the Agreement and General Release and that, after having engaged in those actions, each of us prefer to and have requested that we enter into the Agreement and General Release prior to the expiration of the twenty-one (21) day period.

_____
Porfirio Severino Figueroa

_____
Victor Gomez

_____
Raul Gutierrez

_____
Edilio Guzman

_____
Harold F. Jimenez

_____
Alfredo Luis Ovalle

_____
Jose Palomeque

_____
Esther Vargas

Witness

_____
Evelynne Gomez

700453-1                                        20

## SCHEDULE A

A.      Skyc shall issue a single check in the gross and net amount of $3,192.99, payable to Porfirio Severino Figueroa

B.      Skyc shall issue a single check in the gross amount of $1,596.50, less applicable withholdings, payable to Porfirio Severino Figueroa

C.      Skyc shall issue a single check in the gross and net amount of $28,244.33, payable to Victor Gomez

D.      Skyc shall issue a single check in the gross amount of $18,610.04, less applicable withholdings, payable to Victor Gomez

E.      Skyc shall issue a single check in the gross and net amount of $1,729.81, payable to Raul Gutierrez

F.      Skyc shall issue a single check in the gross amount of $864.41, less applicable withholdings, payable to Raul Gutierrez

E.      Skyc shall issue a single check in the gross and net amount of $1,127.63, payable to Edilio Guzman

G.      Skyc shall issue a single check in the gross amount of $563.82, less applicable withholdings, payable to Edilio Guzman

H.      Skyc shall issue a single check in the gross and net amount of $14,710.87, payable to Harold F. Jimenez

I.      Skyc shall issue a single check in the gross amount of $14,710.87, less applicable withholdings, payable to Harold F. Jimenez

J.      Skyc shall issue a single check in the gross and net amount of $9,362.49, payable to Alfredo Luis Ovalle

K.      Skyc shall issue a single check in the gross amount of $6,687.51, less applicable withholdings, payable to Alfredo Luis Ovalle

L.      Skyc shall issue a single check in the gross and net amount of $17,979.95, payable to Jose Palomeque

M.      Skyc shall issue a single check in the gross amount of $11,441.69, less applicable withholdings, payable to Jose Palomeque

N.      Skyc shall issue a single check in the gross and net amount of $56,219.73, payable to Esther Vargas

O.      Skyc shall issue a single check in the gross amount of $35,759.86, less applicable withholdings, payable to Esther Vargas

## AGREEMENT AND GENERAL RELEASE

IT IS HEREBY STIPULATED AND AGREED this ___ day of July, 2015, by and between: (a) Alejandro Armas ("Armas"), Ruben Martinez ("Martinez"), Juan Hernandez ("Hernandez"), Angel Loja ("Loja"), and Jose Lopez ("Lopez") (hereafter Armas, Martinez, Hernandez, Loja and Lopez are jointly referred to as "Releasors"); and (b)   SKYC MANAGEMENT LLC a/k/a GREISMAN MANAGEMENT and a/k/a   B.   GREISMAN REALTY, 161 HOLDING LTD, SHIMON GREISMAN, GARY GARTENBERG, POST LLC; ABBY ASSOCIATES; 2275 HOLDING LTD; 22 HOLDING CORP.; CHAMA HOLDING CORP.; 346 HOLDING CORP.; STEB REALTY CORP.; 674 HOLDING LTD; 666 HOLDING LLC; 116 WEST CORP.; DBPB HOLDING CORP.; HELBOR REALTY CORP.; BRAGREIS REALTY CORP.; S&S GROUP HOLDINGS, LLC; BRONX RIVER ASSOC. LLC; WALTON AVENUE REALTY ASSOC LLC; TOWNSEND AVENUE REALTY LLC; 1820 HOLDING LTD; HENNESSY REALTY LLC; GLEASON LLC; 2246 HOLDING CORP.; 2188 REALTY LTD; 2195 GRAND CONCOURSE REALTY LLC; 2472 WEBSTER REALTY LLC; 2281-85 REALTY LLC; 2395-97 REALTY LLC; UNIVERSITY REALTY HOLDINGS LLC;   2522 REALTY LLC; AND HEIGHTS REALTY CO., LLC, (all hereinafter referred to as Skyc or "Releasees") The terms Skyc or Releasees herein includes each, every and any company affiliated with Skyc, as well as their agents, employees, principals, partners, officers, successors, and assigns, both individually and in their official capacities, and thereby includes all such persons affiliated with Skyc.

In return for the good and sufficient consideration set forth below, Releasors agree to resolve all claims against Releasees, including, but not limited to, those which resulted in an

action commenced in the United States District Court for the Southern District of New York,

bearing docket number 14 - Cv- 06360 (referred to herein as the "Matter"), as follows:

1.      Skyc shall pay Releasors payment in the gross amount of three hundred thirty-five

thousand dollars ($850,000.00), payable 10 days from the execution of this Agreement and

General Release, and the Court's acceptance of this settlement, whichever is later, as follows:

A.      Skyc shall issue a single check in the gross and net amount of Two Hundred

Eighty-Three Thousand Seven Hundred Eighty Nine dollars ($284,789.00), payable to Rapaport

Law Firm, PLLC,

B.      Skyc shall issue a single check in the gross and net amount of $75,738.25,

payable to Alejandro Armas

C.      Skyc shall issue a single check in the gross and net amount of $24,614.95,

payable to Ruben Martinez

D.      Skyc shall issue a single check in the gross and net amount of $126,861.61,

payable to Juan Hernandez

E.      Skyc shall issue a single check in the gross and net amount of $149,115.81,

payable to Angel Loja.

F.      Skyc shall issue a single check in the gross and net amount of $11,359.76,

payable Jose Lopez.

G.      Skyc shall issue a single check in the gross amount of $37,303.95, less applicable

withholdings, payable to Alejandro Armas

H.      Skyc shall issue a single check in the gross amount of $12,123.77, less applicable

withholdings, payable to Ruben Martinez

2

I.     Skyc shall issue a single check in the gross amount of $62,484.07, less applicable withholdings, payable to Juan Hernandez

J.     Skyc shall issue a single check in the gross amount of $60,012.26, less applicable withholdings, payable to Angel Loja

K.     Skyc shall issue a single check in the gross amount of $5,596.57, less applicable withholdings, payable Jose Lopez.

L.     The check issued in accordance with subpart A is attributable to attorney's fees as per the fee shifting nature of the statutes in question.

M.     The checks issued in accordance with subparts B-F are issued in the nature of liquidated damages pursuant to the Fair Labor Standards Act and/or Article 198 (1-a) of the New York Labor Law.

N.     The remaining checks are issued in the nature of back wages allegedly owed to these individuals.

O.     Releasors acknowledge that the above sums constitute full payment for every hour worked by each Releasor on behalf of Skyc (including payment at the rate of time and one-half of her hourly rate for all hours greater than 40 worked in any particular week) and any accrued personal or vacation days.

2.     In return for the consideration described above, except as otherwise provided herein, Releasors release and forever discharge Releasees, their agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits, attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, ex-

3

tents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, arising out of Releasors' employment with Releasees, which against Releasees, Releasors, their heirs, executors, administrators, agents, successors, and assigns, ever had, may now have or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever including, but not limited to, those arising under any federal, state or local, human or civil rights, wage-hour, or labor laws and/or regulations, contract or tort laws, including, but not limited to:

- all Claims arising out of Releasors' employment/attempted employment with Releasees, under: *Title VII of the Civil Rights Act of 1964; as the Civil Rights Act of 1991: the Age Discrimination in Employment Act of 1967*, 29 USC §621, *et seq.; the Older Worker Benefit Protection Act 29* U.S.C. §626(f); *the Rehabilitation Act; the Equal Pay Act; the Employee Retirement Income Security Act of 1974*, as amended, 29 U.S.C. § 1001 <u>et seq.</u>; *the Worker Adjustment and Retraining Notification Act of 1988*, 29 U.S.C. § 2101 <u>et seq.</u>; *the Americans with Disabilities Act*, 42 U.S.C. § 12101 <u>et seq.</u>; *the Family and Medical Leave Act of 1993*, 28 U.S.C. §§ 2601 and 2611 <u>et seq.</u> and any amendments or modifications thereto; *the New York Human Rights Law; the New York Executive Law; the New York City Administrative Code and Civil Rights Laws;* and any other laws against employment discrimination in any state or locality; *the New York Whistleblower Law (New York Labor Law §740, et seq.; the anti-discrimination and anti-retaliation provisions of the New York Worker's Compensation laws (e.g., §120) and of the Sarbanes-Oxley law; and of OSHA;* Sections 1981-1988 of *Title 42 of the United States Code; the Fair Credit Reporting Act; the Immigration Reform Control Act;* any amendments to the statutes

4

referred to herein; and any other federal, state or local law relating to employment discrimination, unlawful harassment or retaliation, human or civil rights, employment protection or standards of any kind or nature;

- all Claims arising out of Releasors' employment/attempted employment with Releasees and/or receipt of premises from Releasees, alleging: unlawful detention of property, conversion;   breach of promise, breach of contract or implied contract; fraud;  misrepresentation;  fraudulent  inducement;  promissory  estoppel;  unjust enrichment; quantum meruit; conversion; negligence; recklessness or personal injury; defamation; or otherwise arising under any common law theory or in tort, contract or quasi-contract, whether in law or equity;

- all Claims arising under or concerning: *The Fair Labor Standards Act,* 29 U.S.C. § 201 et seq. *Article 6 or Sections 190-198 of New York Labor Law*, and any similar federal law or law of any state or locality; sales commissions earned or accrued, whether as an employee or independent contractor; any costs, damages, interest, liquidated damages or attorneys' fees relating to any such alleged violation; allegedly unpaid wages, salary, or overtime compensation; employee classification; exempt classification; "at-will" classification; or any other asserted basis for additional remuneration or other rewards;

- all Claims for:   fringe benefits; employee benefits; employee contributions; supplemental benefits; allowances; reimbursement; participation in any benefit plan; administration or application of any benefit plan; and any claims for non-vested benefits arising under ERISA;

5

- all Claims arising out of Releasors' employment/attempted employment with Releasees, for: costs, fees or attorneys' fees (other than as provided for above); payment of income and employment taxes, except as to taxes withheld for Releasor's benefit pursuant to paragraph 1 above; and any other Claims arising or accruing up to the date each Releasor signs this Agreement as the result of any cause, matter or thing, of any kind or nature, against Releasees, their agents, successors and assigns, both individually and in their official capacities, from the beginning of the world to the date of this Agreement.

3.      Except as set forth herein, Releasors promise and represent that they will withdraw, with prejudice, any and all outstanding administrative complaints or charges, filed with federal, state and local agencies/administrative bodies and will also withdraw/discontinue with prejudice all arbitrations and judicial actions, including, but not limited to, the Matter, as well as any and all other lawsuits, claims, demands, appeals or actions pending against Releasees and will not file any other administrative or judicial complaints, charges, lawsuits, claims, demands, appeals or actions of any kind based on Releasors' employment with Releasees or the termination thereof.  In the event any such complaints, charges, lawsuits, claims, demands, appeals or actions are not withdrawn or are filed due to circumstances beyond their control, each Releasor promises and represents that he/she will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceedings connected with or resulting from such complaints, charges, lawsuits, claims, demands, appeals or actions and that she will execute such papers or documents, which are factually accurate, as may be reasonably necessary to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice.  Should any Releasor be compelled to testify in any matter concerning Releasees,

6

he/she shall provide notice immediately upon notice of same to Releasees and their counsel (Meltzer, Lippe, Goldstein & Breitstone, LLP).

4.      Notwithstanding any other term or provision of this Agreement, it is expressly acknowledged, agreed and understood that this Agreement does not limit, impair, and/or otherwise affect the ongoing personal injury lawsuit of Ruben Martinez, which is pending in the Supreme Court of the State of New York, County of Bronx, which is entitled "RUBEN MARTINEZ and GRECIA MARTINEZ, Plaintiffs, against GREISMAN MANAGEMENT et al.", Index No. 300457/10 (hereinafter the "Ruben Personal Injury Lawsuit").  The claims, matters and issues that are the subject of the Ruben Personal Injury Lawsuit are separate and distinct from the claims and issues that are the subject of this Agreement.  Nothing in this Agreement shall be construed as limiting Ruben Martinez's claims in the Ruben Personal Injury Lawsuit, and the claims and/or causes of action that are the subject of the Ruben Personal Injury Lawsuit are not released and/or discharged by virtue of this Agreement.  The amount of damages recoverable in the Ruben Personal Injury Lawsuit shall not be reduced and/or impaired by any term and/or provision of this Agreement and/or by any consideration received by Relesee in connection with this Agreement.

5.      Notwithstanding any other term or provision of this Agreement, it is expressly acknowledged, agreed and understood that this Agreement does not limit, impair, and/or otherwise affect the ongoing Workers Compensation of Alejandro Armas (WCB Case No. G0960653) (hereinafter the "Armas Workers Compensation Claim"), which is pending.  The claims, matters and issues that are the subject of the Armas Workers Compensation Claim are separate and distinct from the claims, matters and issues that are the subject of this Agreement. Nothing in this Agreement shall be construed as limiting and/or otherwise impairing Alejandro

7

Armas' claims that are the subject of the Armas Workers Compensation Claim, and the claims that are the subject of the Armas Workers Compensation Claim are not released and/or discharged by virtue of this Agreement. The amount of damages recoverable in the Armas Workers Compensation Claim shall not be reduced and/or impaired by any term and/or provision of this Agreement and/or by any consideration received by Relesee in connection with this Agreement.

6.      Releasors agree and understand that nothing contained in this Agreement and General Release is an admission by Releasees of any liability, breach of duty or unlawful conduct whatsoever or violation of any local, state or federal law, regulation or ordinance. To the contrary, Releasees specifically deny any wrongdoing whatsoever. Rather, in order to avoid wasting unnecessary time and expense and to reach an amicable resolution of the Matter, Releasees enter into this Agreement and General Release. Similarly, Releasors deny any wrongdoing and enter into this Agreement and General Release for the reasons set forth above, as well as for the consideration described in the first paragraph hereof.

7.      Nothing in this Agreement shall be construed to restrict any communications or participation any Releasor may have with any agency of the United States government, subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law. Each Releasor understands that although he/she is not prohibited from filing a charge or complaint against any Releasee with any agency of the United States government, subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law; except as provided for herein, by virtue of this Agreement, each Releasor waives any right to recover monetary damages in any charge, complaint or lawsuit filed by any Releasor or anyone else on Releasors' behalf. Provided, however, that the foregoing waiver does not apply to the

8

Ruben Personal Injury Lawsuit and/or the Armas Workers Compensation Claim.  Should any Releasor be subpoenaed to testify in any subsequent action or proceeding involving Releasees pertaining to overtime and/or wage and hour issues, he/she will forthwith notify Releasee and at that time provide Releasee with a copy of any such subpoena.  In addition, Releasors may file this Agreement n with a court and/or administrative agency for the purpose of enforcing any term and/or provision of this Agreement; provided, however, that such filing shall be under seal to the extent permissible by said court and/or agency.

8.      This Agreement and General Release may not be modified, altered or changed except upon express written consent of both Releasors and Skyc.

9.      Other than as provided in Paragraph 5, hereof, the terms of this Agreement and General Release may not be voluntarily disclosed by any Releasor to anyone other than said Releasor's counsel, accountant, financial advisor, spouse or significant other and then, only upon the assurance that said persons/entities will maintain said confidentiality.

As a breach of this provision will cause damages to Releasees that are difficult to quantify, the parties hereto have agreed that each such breach, if any, will result in liquidated damages of thirty thousand dollars ($30,000.00).

10.      **Releasors represent that they have been and hereby are advised to consult legal counsel regarding this Agreement and General Release and that they have each done so.  Releasors must fully execute and return this Agreement and General Release by August 3, 2015, a date in excess of twenty-one (21) days from its delivery to them. Releasors acknowledge that they have been given twenty-one (21) days to consider this Agreement and General Release carefully, and fully understand and agree to all of its terms.  If the Agreement and General Release is not fully executed and returned by that**

9

date, it will be void *ab initio*. **If, however, all Releasors execute the 21 day waiver attached hereto, then they must return this Agreement and General Release no later than July 28, 2015 or it will be void *ab initio.***

**Any Releasor may revoke this Agreement and General Release within seven (7) days of signing it.** This seven (7) day time period will begin to run the day after all Releasors execute this Agreement and General Release. If any Releasor revokes this Agreement and General Release, it shall be rescinded in its entirety and no Releasor will receive the benefits set forth herein. Said revocation must be in writing, and must be delivered by hand or by certified mail, return receipt requested, to Richard M. Howard, Esq. Meltzer, Lippe Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, New York 11501 and received within seven (7) days of the execution of this Agreement and General Release. If this Agreement and General Release is not revoked, it shall become effective eight (8) days after execution, subject to the United States District Court's approval of same. If the last day of the revocation period is a Saturday, Sunday or legal holiday, then the revocation period shall not expire until the following day which is not a Saturday, Sunday, or legal holiday.

11.     This Agreement and General Release may be executed in counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute the same instrument.

12.     All prior negotiations, agreements, and understandings of the parties are superseded by this Agreement and General Release.

13.     No waiver or modification of any provision of this Agreement and General Release shall be valid unless in writing and signed by the parties.

14.     This Agreement has been translated into Spanish for the Releasors.

10

15.    Whenever used in this Agreement and General Release, the singular word shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.  This General Release shall not be interpreted in favor of, or against, either party because of such party having drafted this General Release.

16.    This Agreement and General Release shall be subject to and governed by the laws of the State New York without giving effect to principles of conflicts of law.

17.    If any term or provision of this Agreement and General Release, or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement and General Release, or the applications of such term or provisions to persons or circumstances other than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement and General Release shall be valid and be enforced to the fullest extent permitted by law.

18.    Releasors agree to execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement and General Release, including, but not limited to, a Stipulation of Discontinuance With Prejudice, to be filed in the form annexed hereto, upon the passing of eight (8) days after this Agreement and General Release is fully executed.

19.    Releasors continuing in the employ of any of the Releasees agree to the following work rules:

A.    They are not working around the clock.  Their normal work week is Monday to Friday, seven hours per day and a total of five hours for the entire weekend.  They are not required to remain at or around the building in which they provide services during off hours, but they are required to reside within 200 feet of said building.  They are required to remain at

11

the building (unless picking up building supplies, of which they will advise their supervisor by phone before doing so) during working hours.

        B.     Should they feel overtime (above 40 hours in any one week) is needed, but not an emergency, they will seek permission from their supervisor before engaging in such work. If it is an emergency, they are authorized to perform such work and advise their supervisor as soon as possible.  Absent such permission or emergency, it is understood and agreed that Releasees will not suffer or permit their working over 40 hours in any one week.

        C.     They will not hire anyone or fire anyone to work in the building in which they provide services.

        D.     They will not lease any space in said building to anyone.

        E.     They will not permit anyone to live in the basement of the building who is not specifically agreed to by their supervisor. Provided, however, that no permission is required with respect to any family member of the Releasor and/or a significant other of Releasor who resides in the same apartment as the Releasor, with the phrase "family member" being utilized and construed in a broad manner.

        F.     Releasees agree that they will not retaliate against any person for participating in this proceeding or engaging in any other protected actions with regard to wages or payment of wages.

        G.     Releasees agree that from the the execution of this Agreement and General Release until one year thereafter, they (or their counsel) will notify the Rapaport Law Firm, P.L.L.C. before taking any adverse employment action against any of the Releasors herein, currently employed by any Releasee, unless an emergent situation mandates that said notice be provided as soon as possible thereafter.

12

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this _17_ day of July, 2015.

Alejandro Armas

Translated from English to Spanish By:

STATE OF NEW YORK
                                    } SS:
COUNTY OF NEW YORK

On July 17, 2015, before me personally came Alejandro Armas to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 020R6308932
Qualified in Queens County
Commission Expires August 4, 2018

13

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this 20 day of July, 2015.

Ruben Martinez

_Ruben Martinez_

Translated from English to Spanish By:

STATE OF NEW YORK
              } SS:
COUNTY OF NEW YORK

      On July 20 2015, before me personally came Ruben Martinez to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

CHRISTINE G. ORTIZ
Notary Public, State of New York
No. 02OR6308932
Qualified in Queens County
Commission Expires August 4, 20 18

14

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this 17 day of July, 2015.

Juan Hernandez

Translated from English to Spanish By:

STATE OF NEW YORK
} SS:
COUNTY OF NEW YORK

On July 17 2015, before me personally came Juan Hernandez to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

PATRICIA BROWN
Notary Public, State of New York
No. 01BR4769987
Qualified in Kings County
Commission Expires 04/30/20 18

15

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this _17_ day of July, 2015.

Angel Loja

Translated from English to Spanish By:

STATE OF NEW YORK
                    } SS:
COUNTY OF NEW YORK

On July 17, 2015, before me personally came Angel Loja to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

PATRICIA BROWN
Notary Public, State of New York
No. 01BR4769967
Qualified in Kings County
Commission Expires 04/30/20

16

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this _17_ day of July, 2015.

Jose Lopez

Translated from English to Spanish By:

STATE OF NEW YORK
                          } SS:
COUNTY OF NEW YORK

On July 17, 2015, before me personally came Jose Lopez to me known, and who executed the foregoing Agreement and General Release, and each duly acknowledged to me that each executed the same.

Notary Public

MARC D. BRAVERMAN
Notary Public, State of New York
No. 02BR6190193
Qualified in Nassau County
Commission Expires 07/21/20__16

17

IN WITNESS WHEREOF, Releasors, and Releasees hereunto set their hands this 22 day of July, 2015.

Shimon Greisman

_____

STATE OF NEW YORK

COUNTY OF KINGS } SS:

On July 22 2015 before me personally came Shimon Greisman, to me known, and who executed the foregoing Agreement and General Release, individually and on behalf of all Releasees and himself, as an officer of each said company and duly acknowledged to me that he executed the same upon the order of the Board of Directors or other members of each said company and in his individual capacity as well.

_____
Notary Public

GOLDENBERG FAIGY
Notary Public, State of New York
No. 01GO6058434
Qualified in King County
Commission Expires 12/31/20 17

18

SHOULD RELEASORS NOT WISH TO USE THE 21-DAY PERIOD,
<u>THEY MAY CAREFULLY REVIEW AND SIGN THIS DOCUMENT</u>

I, Alejandro Armas, Ruben Martinez, Juan Hernandez, Angel Loja, and Jose Lopez, each acknowledge that I was informed and understand that I have twenty-one (21) days within which to consider the attached Agreement and General Release, have been advised of my right to consult with an attorney regarding such agreement and have done so and have considered carefully every provision of the Agreement and General Release and that, after having engaged in those actions, each of us prefer to and have requested that we enter into the Agreement and General Release prior to the expiration of the twenty-one (21) day period.

_____
Alejandro Armas

_____
Ruben Martinez

_____
Juan Hernandez

_____
Angel Loja

_____
Jose Lopez

Witness

_____

19